**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**RICHARD E. S.,**[1]

**Plaintiff,**

**v.**

**Civil Action 3:25-cv-371**
**Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**OPINION AND ORDER**

Plaintiff, Richard E. S. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") and for supplemental security income ("SSI"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 7). For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED**.

## I. BACKGROUND

Plaintiff filed his DIB and SSI applications in October 2023, alleging that he has been disabled since December 1, 2022. (R. at 217–23, 224–30.) After those applications were denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held a telephonic

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

hearing on November 7, 2024, at which Plaintiff, who was represented by counsel, appeared and testified. (*Id*. at 40–62.) A vocational expert ("VE") also appeared and testified. On November 29, 2024, the ALJ issued an unfavorable determination, which became final on September 15, 2025, when the Appeals Council denied Plaintiff's request for review. (R. at 14–39, 1–6.)

Plaintiff seeks judicial review of that unfavorable determination. He contends that the ALJ's residual functional capacity ("RFC")[2] determination is not supported by substantial evidence. (Pl.'s Statement of Errors 6–9, ECF No. 11.) Specifically, he contends that the ALJ erred by determining that he was capable of light work. (*Id*. at 4.) The Court finds that this contention of error lack merit.

## II. THE ALJ'S DECISION

The ALJ issued the unfavorable determination on November 29, 2024. (R. at 14–39.) The ALJ initially determined that Plaintiff met the insured status requirements through June 30, 2026.

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. §§ 404.1545(a)(1), (b)–(c); 416.945(a)(1), (b)–(c).

(*Id*. at 19.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of December 1, 2022. (*Id*.) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: non-small cell nonmetastatic lung cancer treated with surgical intervention and chemotherapy; chronic obstructive pulmonary disease (COPD); obesity; an anxiety disorder; and a depressive disorder. (*Id*. at 20.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.)

The ALJ then set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could occasionally climb

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). *See also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> ramps and stairs, but should avoid climbing ladders, ropes, and scaffolds. He could occasionally stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to extreme cold, extreme heat, and atmospheric conditions as the term is defined by the SCO. The claimant should avoid exposure to unprotected heights and moving mechanical parts. The claimant should avoid commercial driving. He could perform simple tasks and tolerate occasional interaction with coworkers, supervisors, and the general public. The claimant could perform work that does not require satisfaction of production quotas or that involves assembly line pace. He could tolerate occasional changes in a routine setting.

(*Id*. at 23.) At step four, the ALJ relied on the VE's testimony to determine that Plaintiff was unable to perform any past relevant work. (*Id*. at 32.) At step five, the ALJ again relied on the VE's testimony to determine that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of merchandise marker, routing clerk, and small product assembler. (*Id*. at 33–34.) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 34.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health & Hum. Serv.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As previously explained, Plaintiff contends that substantial evidence does not support the ALJ's determination that he could perform light work. (Pl.'s Statement of Errors 3–5, ECF No. 13.) The Court disagrees.

A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. §§ 404.1545(a)(1), (b)–(c); 416.945(a)(1), (b)–(c). Although an ALJ is responsible for determining a claimant's RFC, 20 C.F.R. §§ 404.1546(c); 416.946(c), an RFC determination must be supported by substantial evidence, *Moats*, 42 F.4th at 561.

An ALJ's RFC determination must also be "based on all the relevant evidence" in a claimant's case record. 20 C.F.R §§ 404.1545(a)(1); 416.945(a)(1). Relevant evidence includes

medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P, 1996 WL 374184 at *5, (S.S.A. July 2, 1996).

Additionally, an ALJ is required to explain how the evidence supports the limits he or she includes in a claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (internal footnote omitted).

Here, the ALJ determined that Plaintiff could perform a reduced range of light work. (R. at 23.) In reaching that determination, the ALJ relied on several categories of evidence, including prior administrative findings from state agency reviewers. Those reviewers found that Plaintiff could stand and/or walk for a total of about 6 hours in an 8-hour workday; occasionally lift and/or carry 20 pounds; and frequently lift and/or carry ten pounds–the exertional requirements for light work. [4] (R. at 77, 84, 94–95, 102–03.) The ALJ wrote as follows:

> The undersigned has read and considered the prior physical findings evidenced within Exhibits B3A; B5A; B8A; and B9A. The prior physical findings noted the

[4] These limits are consistent with the requirements for light work which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds" and "requires a good deal of walking or standing." 20 C.F.R. §§ 404.1567(b); 416.967(b). More particularly, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10, 1983 WL 31251, at *6, (S.S.A. 1983).

> claimant could perform a reduced range of light work with postural limits and environmental limits. The undersigned has not adopted the prior findings verbatim. Although the consultants support their conclusions with citation and discussion of specific evidence of record, the undersigned has not adopted the findings verbatim. The undersigned finds the reduction to the light exertional level consistent with the claimant's history of lung cancer now in remission after surgical intervention and chemotherapy intervention; ongoing COPD requiring inhaler medication management; and obesity. The undersigned finds the claimant's combination of physical conditions with residuals including reports of intermittent shortness of breath and fatigue in the presence of obesity supports greater postural limits in stooping, kneeling, crouching, and crawling. The undersigned has not adopted the environmental limits verbatim. The undersigned notes limits on temperature and atmospheric conditions as well as hazards are well supported by the claimant's obesity and breathing residuals from lung cancer and COPD, including shortness of breath and fatigue. The undersigned notes that the limitation on exposure to noise is not supported. The record does not support any hearing impairment, headaches, or other diagnoses that warrants the limitation on exposure to noise. The claimant nor his attorney testified to noise as an exacerbating condition to any of his impairments. Thus, the undersigned finds the prior physical findings collectively partially persuasive as discussed herein.

(*Id*. at 30.)

As this discussion demonstrates, the ALJ determined that the state agency reviewers' findings were partially persuasive[5] because they were supported by the reviewers' citations to and discussions of specific record evidence. (*Id*.) They ALJ also found their light-work limitation persuasive because it was consistent with evidence that Plaintiff's lung cancer was in remission and that his COPD was managed with inhalers. (*Id*.) Those prior administrative findings constituted substantial evidence to support the ALJ's assessment of light work. *See Hefflin o.b.o. LDS v. Kijakazi*, No. 1:20-cv-1414, 2021 WL 4477785, at *6 (N.D. Ohio Sept. 30, 2021) (collecting cases recognizing that state agency opinions may constitute substantial evidence supporting an ALJ's decision); *see also* 20 C.F.R. §§ 404.1513a(b); 416.913a(b) (requiring ALJs

[5] To the extent the ALJ discounted the reviewers' findings, he did so because they were inconsistent with evidence demonstrating that the reviewers' postural limits were not restrictive enough and that their noise exposure limit was too restrictive. (R. at 30.) This had no impact on the exertional requirements for light work.

to consider prior administrative findings from state agency medical or psychological consultants). Notably, Plaintiff does not challenge the ALJ's evaluation of those prior administrative findings.

Moreover, the ALJ did not rely exclusively on the state agency reviewers' prior administrative findings. He also considered medical records documenting Plaintiff's lung cancer, COPC, and obesity; records discussing Plaintiff's surgery and chemotherapy; objective diagnostic testing; and Plaintiff's reports of his symptoms. (R. at 24–26.) After reviewing and discussing that evidence, the ALJ summarized it and explained why it supported a reduced range of light work. (*Id*. at 26.) The ALJ wrote as follows:

> While the record supported ongoing treatment for breathing symptoms, the record supported his COPD symptomology was generally stable and well controlled via the utilization of prescribed medications, including inhalers. The record objectively supported no recurrence or metastatic carcinoma. While the claimant reported recurrent fatigue and shortness of breath during his hearing, the record documented he was encouraged to engage in increased physical activity and admitted that he was enjoying becoming more active to his medical providers. He did not report recurrent napping to his medical providers after cancer remission. While there were reports of some shortness of breath, the claimant was not noted to be hypoxic and required no emergent treatment for respiratory distress. The claimant demonstrated normal oxygen saturation on room air. The claimant did not require hospitalization for any extended duration due to breathing deficits. There was no recommendation for invasive treatment such as constant use of supplemental oxygen.
>
> The undersigned has appropriately considered the claimant's combination of physical conditions and associated symptoms when reasonably noting he could perform a reduced range of light work noting he could occasionally climb ramps and stairs, but should avoid climbing ladders, ropes, and scaffolds. He could occasionally stoop, kneel, crouch, and crawl; should avoid concentrated exposure to extreme cold, extreme heat, and atmospheric conditions as the term is defined by the SCO; should avoid exposure to unprotected heights and moving mechanical parts; and should avoid commercial driving.

(*Id*.)

As this discussion demonstrates, the ALJ explained that although Plaintiff had a history of lung cancer, it had not recurred or metastasized. (*Id*.) Substantial evidence supports that

explanation. The record reflects that Plaintiff was diagnosed with lung cancer in February 2023, began chemotherapy in March 2023, and underwent lung surgery in July 2023. (*Id*. at 490.) By November 2023, Plaintiff was in remission with no evidence of residual tumors. (*Id*.) Imaging in August 2024 likewise confirmed no recurrence. (*Id*. at 1229.) Although Plaintiff continued to receive monthly chemotherapy after achieving remission to prevent recurrence, he tolerated that treatment without any major side effects. (*Id*. at 498.) Indeed, it appears that the only documented side effects he experienced from his post-remission chemotherapy were skin dryness and itchiness, for which he was advised to use lotion, and neuropathy, which was improved with Cymbalta. (*Id*. at 490, 1129, 1194, 1205, 1205, 1233, 1241, 1247, 1257.)

The ALJ also explained that despite reports of fatigue, the record does not reflect that Plaintiff reported napping to his providers after his cancer remission. (*Id*. at 26.) The record also supports that explanation. In December 2023, Plaintiff reported experiencing increased fatigue over the preceding one to two months, and a treatment provider noted that his vitamin D deficiency might be contributing to that symptom. (*Id*. at 1105, 1111.) But Plaintiff did not report to his treatment providers that he needed to nap. To the contrary, he regularly reported that his energy levels were "pretty decent" and that his sleep was fine. (*Id*. at 1130, 1230, 491, 1191, 1244.)

The ALJ also explained that Plaintiff's COPC was stable and managed with medications. (*Id*. at 26.) Substantial evidence supports that explanation too. In October 2023, Plaintiff reported that he was feeling well, had experienced no recent exacerbations, and believed that his COPC was well managed with medications. (*Id*. at 434–35.) On examination, his pulmonary effort and breath sounds were normal with no wheezing, and his oxygen saturation was ninety-eight percent. (*Id*. at 439, 440.) In January 2024, Plaintiff's COPD was described as stable, and

Plaintiff again reported that it was well managed with medications. (*Id*. at 1110.) His oxygen saturation levels also remained normal—his oxygen saturation level was ninety-six percent in February and March 2024, and ninety-eight percent in April 2024. (*Id*. at 1181, 1196, 1281.) Pulmonary function testing in May 2024 showed that he had moderately severe obstructive airway disease with a mild diffusion defect. (*Id*. at 1250.) Even so, Plaintiff was advised to increase his exercise, and Plaintiff reported that he enjoyed becoming more active and felt motivated to be healthier. (*Id*.) In August 2024, his oxygen saturation level was again ninety-eight percent. (*Id*. at 1295.)

Plaintiff does not challenge the ALJ's discussion of this evidence. Instead, he points to other portions of the record concerning his lung-cancer treatments and his self-reported COPD symptoms. (Pl.'s Statement of Errors 4–5, ECF No. 13.) But where substantial evidence supports an ALJ's determination, it will not be disturbed, even if other evidence could support the opposite conclusion. *Emard*, 953 F.3d at 849.

Accordingly, the ALJ did not err by determining that Plaintiff could perform a reduced range of light work. That determination was substantially supported by the record including prior administrative findings and medical records concerning Plaintiff's cancer remission, fatigue, and COPD. Plaintiff's contention of error, therefore, lacks merit.

## V. CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's non-disability determination and **OVERRULES** Plaintiff's Statement of Errors.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE